UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



LIBERTY MUTUAL FIRE INSURANCE,

    Plaintiff,

- against -

COSTCO WHOLESALE CORPORATION,
successor to COSTCO COMPANIES,
INC.,

    Defendant.

**OPINION AND ORDER**

06 Civ. 5226(PKL)

**APPEARANCES**

Henry J. Catenacci
Podvey, Meanor, Catenacci, Hildner, Cocoziello & Chattman
The Legal Center
One Riverfront Plaza
Newark, NJ 07102

Attorney for the Plaintiff

Douglas H. Flaum
Fried, Frank, Harris, Shriver & Jacobson
One New York Plaza
New York, NY 10011

Attorney for the Defendant

**LEISURE, District Judge:**

Plaintiff Liberty Mutual Fire Insurance Company ("Liberty Mutual") brings this action against defendant Costco Wholesale Corporation ("Costco"), seeking a declaratory judgment regarding the interpretation of a single provision of an insurance policy. (See Compl. ¶ 15, Prayer for Relief.) Costco moves pursuant to 28 U.S.C. § 1404(a) to transfer venue of this action to the Western District of Washington. For the reasons set forth herein, Costco's motion is granted.

## BACKGROUND

This case concerns the interpretation of an insurance policy that Liberty Mutual, a mutual insurance company organized under the laws of Wisconsin and with its principal place of business in Massachusetts, issued to Costco, a membership warehouse club incorporated and with its principal place of business in Washington State. (Compl. ¶ 2; Answer ¶ 4.) Costco bought $20 million of primary insurance (the "Primary Insurance") from a group of insurance companies to insure at least 261 of its stores against all risks for the period from June 1, 1997 to June 1, 1998. (Compl. ¶¶ 10, 12; Answer ¶¶ 10, 12; Affidavit of Janice Chamberlain ¶¶ 7, 14, Sept. 5, 2006 ("Chamberlain Aff.").) Liberty Mutual provided Costco with the insurance policy (the "Policy") at issue, which covered a certain excess over the Primary Insurance. (Compl. ¶¶ 10, 11; Answer ¶ 10.) The Policy was procured,

2

negotiated, and executed in Seattle, Washington and in California. (Chamberlain Aff. ¶ 12.) The Policy contains a provision which Liberty Mutual contends limits Costco's right to bring suit against Liberty Mutual under the policy to the two years after the inception of its loss.[1] (See Compl. ¶¶ 15, 19.)

On July 21, 1997, Costco opened a store in New Rochelle, New York. (Compl. ¶ 8; Answer ¶ 8.) This store was among those covered by the Primary Insurance and by the Policy. (Compl. ¶ 12; Answer ¶ 12.) In October 1997, the New Rochelle store was damaged. (Compl. ¶ 13; Answer ¶ 13.) Costco sought payment under its Primary Insurance, but those insurers refused to pay. (Chamberlain Aff. ¶¶ 15-17.) Costco litigated against the issuers of the Primary Insurance in the Western District of Washington (the "Previous Litigation"), and Costco was awarded full payment. (Chamberlain Aff. ¶¶ 17-19, Ex. J.)

Arguing that the two years in which Costco had to bring suit have passed, Liberty Mutual brings this suit seeking a declaration that Costco is barred from bringing any suit on the Policy. (Compl. Prayer for Relief.) Costco counterclaims seeking a declaratory judgment that Liberty Mutual is required to provide

---

[1] That provision reads: "SUIT AGAINST THE COMPANY – No suit or action on this policy for recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of the policy, nor unless commenced within twenty-four (24) months next after inception of the loss, unless a longer period of time is provided by applicable statute." (Compl. ¶ 15; Answer ¶ 15.)

3

coverage under the Policy for the New Rochelle store. (Answer ¶¶ 38-39.)

## DISCUSSION

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The defendant bears the burden of making a "'clear-cut showing,'" Beatie & Osborn LLP v. Patriot Sci. Corp., 431 F. Supp. 2d 367, 394 (S.D.N.Y. 2006) (quoting Miller v. Bombardier Inc., No. 93 Civ. 0376, 1993 U.S. Dist. LEXIS 13319, 1993 WL 378585, at *2 (S.D.N.Y. Sept. 23, 1993)), that a transfer would achieve the stated objectives of the statute. See D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006); Filmline (Cross-Country) Productions v. United Artists Corp., 865 F.2d 513, 521 (2d Cir.1989); Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978). The decision to transfer venue is committed to the district court's "broad discretion." In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992).

Some of the factors that help guide a district court's determination of whether transfer is appropriate are "'(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of

operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.'" D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106-107 (2d Cir. 2006) (quoting Albert Fadem Trust v. Duke Energy Corp., 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002) (alteration in D.H. Blair & Co.). "There is no rigid formula for balancing these factors and no single one of them is determinative." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (citing S&S Mach. Corp. v. General Motors Corp., No. 93 Civ. 3237, 1994 U.S. Dist. LEXIS 13677, 1994 WL 529867, at *7 (S.D.N.Y. Sept. 28, 1994)). "Instead, weighing the balance 'is essentially an equitable task' left to the Court's discretion." Citigroup, 97 F. Supp. 2d at 561 (quoting First City Nat'l Bank & Trust Co. v. Simmons, 878 F.2d 76, 80 (2d Cir. 1989)).

Liberty Mutual argues that this action does not implicate most of these considerations. This is so, Liberty Mutual argues, because this is a simple matter of contract interpretation and the Court will resolve the matter by summary judgment and without resort to extrinsic evidence. However, the issue of whether the contract is ambiguous is not now properly before the Court, and the Court will not convert Liberty Mutual's opposition to the instant motion into a motion for summary judgment. Rather, as this Court has stated before, "this Court follows other Courts in this District in considering the convenience of witnesses to be a

'crucial factor' supporting the transfer of insurance contract interpretation disputes." Royal Ins. Co. of Am. v. Tower Records, Inc., No. 02 Civ. 2612, 2002 U.S. Dist. LEXIS 20109, at *12, 2002 WL 31385815 (S.D.N.Y. Oct. 22, 2002) (Leisure, J.) (quoting Avemco Ins. Co. v. GSF Holding Corp., No. 96 CIV. 8323, 1997 U.S. Dist. LEXIS 13716, at *12, 1997 WL 566149 (S.D.N.Y. Sept. 5, 1997) (Preska, J.)).

Liberty Mutual does not dispute that this action might have been brought in the Western District of Washington. (Pl.'s Mem. Law Opp. 8.) Accordingly, the Court considers whether transfer of venue would further the convenience of the parties and witnesses and be in the interest of justice.

1. Plaintiff's Choice of Forum

A plaintiff's choice of forum is generally "'entitled to substantial consideration.'" Warrick v. General Elec. Co. (In re Warrick), 70 F.3d 736, 741 (2d Cir. 1995) (quoting A. Olinick & Sons v. Dempster Bros., Inc., 365 F.2d 439, 444 (2d Cir. 1966)). This is so in part because, when little is known about how the case will develop, a plaintiff's choice of forum "reflects one side's assessment of the balance of relevant factors." Albert Fadem Trust v. Duke Energy Corp., 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002). However, a plaintiff's choice of forum may be guided by factors other than its own convenience, such as strategic advantages a certain forum may provide. Cf. Iragorri v.

6

United Techs. Corp., 274 F.3d 65, 72 (2d Cir. 2001) (listing improper forum shopping reasons in a forum non conveniens context). For this reason, the consideration afforded to a plaintiff's choice of forum is usually diminished where, as here, the plaintiff has chosen a forum that is neither the district of its residence nor the district in which the cause of action arose. See Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 376 (S.D.N.Y. 2006); Halliwell v. Moran Towing & Transp. Co., No. 98 Civ. 6500, 1999 U.S. Dist. LEXIS 6316, at *2, 1999 WL 258260 (S.D.N.Y. Apr. 29, 1999); Miller v. Bombardier Inc., No. 93 Civ. 0376, 1993 U.S. Dist. LEXIS 13319, at *15-16, 1993 WL 378585 (S.D.N.Y. Sept. 23, 1993).

The only connection of this action to this forum is that the underlying incident occurred in this District. However, this action concerns the interpretation of a single provision of an insurance policy, not the specifics of the loss for which Costco seeks coverage under that insurance policy. The damage to the New Rochelle store is not relevant to the issue to be litigated. Thus, in light of the lack of connection between the plaintiff or the cause of action and this District, the weight Liberty Mutual's choice of forum is entitled to is substantially diminished. See Avemco Ins. Co. v. GSF Holding Corp., No. 96 CIV. 8323, 1997 U.S. Dist. LEXIS 13716, at *19, 1997 WL 566149 (S.D.N.Y. Sept. 5, 1997) (Preska, J.) (holding that plaintiff's choice of forum is entitled

to "substantially diminished" weight in insurance contract litigation where only connection to forum is accident giving rise to insurance claim). This consideration weighs only minimally against transfer.

2. Convenience of Witnesses

The convenience of the forum for witnesses "is probably considered the single most important factor in the analysis of whether a transfer should be granted." Schnabel v. Ramsey Quantitative Sys., Inc., 322 F. Supp. 2d 505, 516 (S.D.N.Y. 2004). When weighing this factor, the Court considers the materiality, nature, and quality of each witness, in addition to the number of witnesses in each district. See Houlihan Lokey Howard & Zukin Capital, Inc. v. Protective Group, Inc., No. 05 Civ. 4741, 2005 U.S. Dist. LEXIS 32841, at *10, 2005 WL 3367044 (S.D.N.Y. Dec. 12, 2005) (citing Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001)). Generally, the convenience of a non-party witness is given greater weight than that of a party witness. See Royal Ins. Co. of Am. v. Tower Records, Inc., No. 02 Civ. 2612, 2002 U.S. Dist. LEXIS 20109, at *14, 2002 WL 31385815 (S.D.N.Y. Oct. 22, 2002). The party moving to transfer venue on the ground that witnesses will be inconvenienced is obliged to "'name the witnesses who will be appearing and describe their testimony so that the court may measure the inconvenience caused by locating a lawsuit in a particular forum.'" Beatie & Osborn LLP

8

v. Patriot Sci. Corp., 431 F. Supp. 2d 367, 396 (S.D.N.Y. 2006) (quoting Schieffelin & Co. v. Jack Co. of Boca, Inc., 725 F. Supp. 1314, 1321 (S.D.N.Y. 1989)). A party moving for transfer of venue for the convenience of witnesses is not required to submit an affidavit from each witness. See Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978) ("When a party seeks the transfer on account of the convenience of witnesses under § 1404(a), he must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover.")

Janice Chamberlain, the Senior Director of Risk Management at Costco, has provided an affidavit that both identifies witnesses resident in or near Washington and describes their involvement in the negotiation of the Policy. (See Chamberlain Aff. ¶¶ 1, 26-31.) Neither party has identified a witness for whom this District would be convenient. The convenience of these witnesses Ms. Chamberlain has identified inclines the Court strongly toward transfer.

Of the witnesses Costco identifies, two are employees of Costco and one is a former employee of Costco's insurance broker Marsh & McLennan, and all three witnesses have knowledge of the negotiation and procurement of the Policy. (See id. ¶ 26.) Ms. Chamberlain also identifies two other Costco employees who have knowledge of the New Rochelle claim and a former Marsh & McLennan

9

employee with similar knowledge. (See id. ¶¶ 27, 28.) Ms. Chamberlain further identifies a former and a current employee of Marsh & McLennan, both who were responsible for the procurement of the Policy. (See id. ¶ 26.) Thus, even though the weight given to the convenience of party witnesses is less than that given to non-party witnesses, the convenience of the witnesses inclines this Court strongly towards transfer.

Ms. Chamberlain identifies several witnesses whose convenience does not influence the Court's determination. First, she identifies a witness resident in Atlanta, Georgia. (Chamberlain Aff. ¶ 26.) It is unclear to the Court that the Western District of Washington is more convenient for this witness than is this District. Likewise, the Court is hard pressed to consider the convenience of witnesses whose current residences are unknown to it. (See Chamberlain Aff. ¶ 26.) Further, Ms. Chamberlain identifies witnesses with knowledge of the Previous Litigation, and witnesses with knowledge of the design, construction, and damage of the New Rochelle facility. (See Chamberlain Aff. ¶¶ 26-28, 29, 30.) The effect, if any, of the Previous Litigation on this action is a question of law, and witnesses to the litigation will not assist the Court in making its conclusion of law. Finally, as Ms. Chamberlain notes, the design, construction, and damage to the New Rochelle facility is not likely to be material to this matter, and accordingly the

convenience of the final class of witnesses is not persuasive to this Court. (See id. ¶ 30.)

Costco further argues that, should any of the non-party witnesses refuse to testify voluntarily, they would be subject to compulsory process in the Western District of Washington. This too influences the Court's determination. See Purcell Graham, Inc. v. National Bank, No. 93 Civ. 8786, 1994 U.S. Dist. LEXIS 15196, at *15, 1994 WL 584550 (S.D.N.Y. Oct. 14, 1994.) However, of those witnesses whose testimony would be pertinent to the issue to be tried, apparently only one is subject to compulsory process in the Western District of Washington. (See id. ¶ 26.) However, it appears that no witnesses in this action are subject to compulsory process in this District. Thus this consideration inclines the Court somewhat further toward transfer.

### 3. Location of Documents

Costco argues that most of the documents and records related to the procurement and negotiation of the Policy are in or near the Western District of Washington. However, Costco has not shown that these documents will create a burden for it absent transfer. Without such a showing, this consideration has little effect on the Court's determination. See, e.g., Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 402 n.2 (S.D.N.Y. 2005) ("the location of documents is entitled to little weight unless defendant makes a 'detailed showing of the burden it would

11

incur absent transfer'" (quoting Royal Ins. Co. of Am. v. Tower Records, Inc., No. 02 Civ. 2612, 2002 U.S. Dist. LEXIS 20109, 2002 WL 31385815, at *6 (S.D.N.Y. Oct. 22, 2002)).

### 4. Locus of the Operative Facts

The locus of operative facts is an "important factor to be considered in deciding where a case should be tried." 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 134 (S.D.N.Y. 1992); accord Royal Ins. Co. of Am. v. Tower Records, Inc., No. 02 Civ. 2612, 2002 U.S. Dist. LEXIS 20109, 2002 WL 31385815, at *3 (S.D.N.Y. Oct. 22, 2002). The locus of the operative facts is significant because it can provide an overview of many of the other factors a court considers. See Canale v. Manco Power Sports, No. 06 Civ. 6131, 2007 U.S. Dist. LEXIS 60992, at *12 (S.D.N.Y. Aug. 20, 2007). Typically where there is no material connection between the forum and the locus of the operative facts, this factor favors transfer. See Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 405 (S.D.N.Y. 2005). To determine where the locus of operative facts lies, courts look to "the site of events from which the claim arises." 800-Flowers, 860 F. Supp. at 134. In disputes regarding interpretation of insurance contracts, courts typically limit their inquiry to where the insurance contract was made. See Age Group Ltd. v. Regal Logistics, Corp., No. 06 Civ. 4328, 2007 WL 2274024, at *3 n.1 (S.D.N.Y. Aug. 7, 2007); Indian Harbor, 419 F.

Supp. 2d at 405; Royal Ins. Co., 2002 WL 31385815 at *3-4. Courts typically do not consider the location of the incident giving rise to the insurance claim in determining the locus of the operative facts. See Royal Ins. Co., 2002 WL 31385815, at *3-4; Royal & Sunalliance v. British Airways, 167 F.Supp.2d 573, 576 (S.D.N.Y. 2001); Avemco Ins. Co. v. GSF Holding Corp., No. 96 CIV. 8323, 1997 U.S. Dist LEXIS 13716, at *18 (S.D.N.Y. Sept. 5, 1997).

Here, the Policy was procured, negotiated, and executed in Washington and California. (Chamberlain Aff. ¶ 12.) Like other courts in this District, this Court does not consider the location of the incident underlying the insurance claim to be significant. This case concerns the interpretation of a particular provision of an insurance policy; the incident itself is immaterial to the meaning of the Policy. Thus the operative facts took place in California and Washington and not in New York. This factor strongly favors transfer of venue.

### 5. Judicial Economy

Costco argues that transfer of venue would further judicial economy and administrative efficiency because the Previous Litigation occurred there. Specifically, Costco argues that Judge Coughenour in the Western District of Washington has "extensive experience in interpreting" the policy at issue (Pl.'s Mem. Supp. Transfer 15) and thus that transfer would promote efficiency. However, the Court doubts that Judge Coughenour's docket is so

light that he will remember the details of an insurance policy at issue in a case he disposed of over six years ago. (See Chamberlain Aff. Ex. J.) This consideration does not affect the Court's determination.

### 6. Local Interest

Liberty Mutual argues that, because the loss ultimately giving rise to this litigation occurred in New Rochelle, New York has an interest in having this matter tried here. In weighing this consideration, the Court determines if there is a local interest in trying this case, and, if so, where that interest lies. Unlike in a choice of law analysis, see, e.g., Insurance Co. of North America v. UNR Industries, Inc., Nos. 92 Civ. 4236, 92 Civ. 8182, 1994 U.S. Dist. LEXIS 146, at *5, 1994 WL 10606, at *2 (S.D.N.Y. Jan. 7, 1994), the Court need not decide which state has the "greatest interest," id., in the litigation; rather, the Court determines whether there in fact exists a local interest in trying the case.

This litigation is between a Washington and a Wisconsin company, the former which has its principal place of business in Washington and the later in Massachusetts. The litigation itself concerns an insurance policy negotiated, executed, and procured in Washington and California, and the Policy at issue covers 260 additional properties in six different countries. (Chamberlain Aff. ¶ 14.) This is not a "localized controvers[y]," Gulf Oil

14

Corp. v. Gilbert, 330 U.S. 501, 509 (1947), that New York has an interest in trying. This consideration does not influence the Court's determination.

### 7. Governing Law

Each party argues that the law of the forum they prefer should govern this dispute and that this factor favors trial of the case in that forum. There is indeed a preference that a case be tried "in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947). However, here neither party argues that this case poses difficult or novel issues of law. Thus this consideration is "'entitled to little weight.'" Marketing/ Trademark Consultants, Inc. v. Caterpillar Inc., No. 98 CIV. 2570, 1998 WL 474074, at *2, 1998 U.S. Dist. LEXIS 12301 (S.D.N.Y. Aug. 10, 1998) (quoting National Patent Devel. Corp. v. American Hosp. Supply Corp., 616 F.Supp. 114, 119 (S.D.N.Y. 1984). Further reducing the significance of this consideration is the fact that a court in either district will have to engage in a choice of law analysis. Cf. Gilbert, 330 U.S. at 509. Thus this consideration does not influence the Court's determination.

In sum, the Court determines that transfer of this action to the Western District of Washington would further the convenience of parties and witnesses and would be in the interest of justice.

15

## CONCLUSION

For the forgoing reasons, Costco's motion to transfer this action to the United States District Court for the Western District of Washington is GRANTED.

**SO ORDERED.**

New York, New York
August **27**, 2007

_____
U.S.D.J.